**Liane C. ILGNER, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Dec. 17, 1975.

Certiorari Denied by Supreme Court
April 26, 1976.

T. Arthur Jenkins, Manchester, John McCord, Tullahoma, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, Charles S. Ramsey, Jr., Dist. Atty. Gen., John W. Rollins, Asst. Dist. Atty. Gen., Manchester, for defendant-in-error.

## OPINION

GALBREATH, Judge.

It is the thrust of this appeal that the denial of plaintiff in error's application for suspension of the one to five year sentence she received on her plea of guilty to the charge of possessing marijuana for resale amounts to cruel and unusual punishment because of the deplorable conditions she alleges exist in penal institutions which would prevent her access to meaningful rehabilitation programs available outside of prison. In addition, it is contended that because the trial judge had, prior to his election, served some twenty-one years as an assistant district attorney general, he had become so prosecution oriented that the plaintiff in error was denied due process.

The granting or withholding of judicial clemency by suspending the execution of a sentence lawfully imposed on one found guilty of crime is a matter that addresses itself solely to the sound discretion of the trial judge. Its exercise will not be disturbed on review unless the record discloses that it "may be branded as arbitrary or capricious or as palpably abusive of its discretion". *Stiller v. State*, 516 S.W.2d 617 (Tenn.1975).

In this case the trial judge set out in his order, after an exhaustive hearing on the application which he took under advisement, the reasons impelling him to deny probation. He noted that the defendant had on two other occasions been allowed to remain at liberty on suspended sentences for drug law violations, and at the time had pending for disposition yet another charge involving the possession of marijuana and Demerol.

The trial judge indicated his agreement with the beneficial goals sought to be accomplished by the appropriate application of probation in lieu of imprisonment and quoted with approval from the Supreme Court in *Stiller v. State, supra*:

"The entire theory of probation is that it is in the public interest that those who violate society's rules of conduct should, in proper cases, be given an opportunity to rehabilitate themselves and to be restored to useful and productive citizenship. More and more our society is coming to realize that 'warehousing' criminals on an indiscriminate basis is financially, socially and morally unacceptable."

He also pointed out from the same opinion:

"However, this concept contemplates that probation be restricted to those who are worthy of this largesse of the law."

The trial judge then concluded:

"The defendant herein has had two such opportunities to rehabilitate herself and has not seen fit to do so. The Court is of the opinion that her efforts along this line at the present time come somewhat late for consideration in this case."

Not only do we find that the action of the trial judge was not arbitrary and capricious, we are impressed with the conscientious and serious consideration he gave to the defendant's request for a third chance to abstain from the criminal activity that had resulted in her past difficulties. We feel, as did he, that the defendant had been afforded ample chance to refrain from a course of unlawful conduct.

Both the author of this opinion, who served for a number of years as Metropolitan Public Defender in the State's second largest city, and the trial judge, who did have a long and distinguished career as a prosecuting official for the State, view the problem confronting the defendant as one of her own making for which she must now accept the consequences. That is dispositive of the suggestion that the trial judge is not imbued with that due regard of the rights, privileges and immunities of those whose trials he presides over that all criminal judges must possess at the time of their coming to the bench or acquire by the time their work products come to the attention of this and the Supreme Court. In reviewing the actions of the trial judge in this case, it appears to us that he has a full awareness of and respect for the protections and safeguards surrounding those accused of crime.

We must concede that our prisons and jails are far from the rehabilitative institutions they should be, and more akin to warehouses for criminals as they are

characterized in *Stiller v. State, supra.* We are not prepared, however, to say that they are incapable of being used for constitutional confinement. Many a good man comes out of a jail as many a rogue comes out of a palace. We all carry within ourselves to some degree the keys to our future freedom, and there are some who are more at liberty in a dungeon than others confined by the chains they forge in their daily unrestricted pursuits.

 In affirming, we note and reject the unsupported theory advanced on behalf of the plaintiff in error that she should be allowed credit for time she spent in voluntary drug therapy prior to her petition being overruled.

DWYER and RUSSELL, JJ., concur.